IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TAMARA SMITH STRONG, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV-02-H-1060-NE |
| SYNTHES (USA), | ) | |
| DEFENDANT. | ) | |

**ENTERED**

NOV 1 2 2003

## MEMORANDUM OF DECISION

The Court has before it the May 28, 2003 motion of defendant Synthes (USA) for summary judgment.  Pursuant to the Court's May 29, 2003 order, the motion was deemed submitted, without oral argument, on June 26, 2003.

## I. Procedural History

Plaintiff Tamara Smith Strong commenced this action on March 29, 2002 by filing a complaint in state court in Madison County, Alabama.  The suit was properly removed to this court on April 29, 2002.  Plaintiff's complaint alleges multiple state law claims arising from the fracture of a cervical spine locking device implanted onto the plaintiff's spine.  Specifically, the plaintiff contended that defendant's alleged conduct constitutes (1) liability under the Alabama Manufacturer's Extended Liability Doctrine; (2) numerous claims of negligence; (3) innocent or

negligent misrepresentation; and (4) breach of implied or express warranty.  Defendant's May 28, 2003 brief in support of its motion for summary judgment (Doc. #11) asserts that there are no genuine issues of material fact regarding any plaintiff's claims and that defendant is entitled to judgment as a matter of law on all claims.  Plaintiff filed a brief in opposition to the motion (Doc. #17) on June 26, 2003.[1]

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine

---

[1] Defendant included its evidentiary submission as part of its motion for summary judgment.  (Doc. #10.)  Plaintiff filed evidentiary submissions on June 19, 2003.  (Doc. #15.)  Number nine (9) of plaintiff's submissions was a declaration of Florence Cone, plaintiff's proffered expert.  On defendant's motion, that declaration was struck by the court in its September 9, 2003 order.  (Doc. #19.)

issue of material fact.  See id. at 323.  Once the moving party
has met its burden, Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by its own affidavits, or by the
depositions, answers to interrogatories, and admissions on file,
designate specific facts showing that there is a genuine issue
for trial.  See id. at 324.

The substantive law will identify which facts are material
and which are irrelevant.  See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  All reasonable doubts about the facts
and all justifiable inferences are resolved in favor of the non-
movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115
(11th Cir. 1993).  A dispute is genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson, 477 U.S. at 248.  If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted.  See id. at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears
the burden of proof on the issue at trial.  See Fitzpatrick, 2
F.3d at 1115-17 (citing United States v. Four Parcels of Real
Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the
moving party bears the burden of proof at trial, then it can only
meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine

issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the

4

non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Testimony of Florence Cone

In its September 9, 2003 order[2] the court granted defendant's motion to strike the declaration of plaintiff's proffered expert, Florence Cone.  The court's second and third grounds[3] for striking the declaration of Florence Cone related directly to her ability to offer opinion testimony in this case under Federal Rule of Evidence 702 and Daubert.  Both of those grounds apply with equal force to the entirety of Cone's

---

[2] The court reconsidered this order on motion of the plaintiff and left it undisturbed in its order of October 3, 2003.

[3] The first ground for the court's granting of the defendant's motion to strike the declaration of Florence Cone was pertinent only to the declaration of Florence Cone and not generally applicable to her qualifications as an expert.

deposition and expert report.

### A.   Cone's Expert Qualifications

Without restating the entirety of the court's September 9, 2003 order, it is clear that Cone is not qualified to offer expert testimony in this case.[4]

> Federal Rule of Evidence 702 provides that:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule was amended in 2000 to incorporate the concepts contained in the United States Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals and its progeny.  In Daubert, the Supreme Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable."  509 U.S. 579, 589 (1993).  Then in Kumho Tire Company, Ltd. v. Carmichael, the Supreme Court extended Daubert's application from "scientific testimony" to "all expert

------------

[4] See generally, Doc. #19, 25 (The court's original, September 9, 2003, order striking the declaration of Florence Cone and the court's order in response to plaintiff's motion to reconsider the September 9, 2003 order, respectively.)

testimony." 526 U.S. 137, 147 (1999).

In applying <u>Daubert</u>/<u>Kumho Tire</u> the court engages in a three part inquiry to determine the admissibility of expert testimony under Rule 702.  Specifically, the court must consider whether:

> *(1) [T]he expert is qualified to testify competently regarding the matters he intends to address*; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and *(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.*

<u>Quiet Technology DC-8, Inc. v. Hurel-Dubois UK, Ltd.</u>, 326 F.3d 1333, 1340-41 (11th Cir. 2003)(emphasis added)(citations omitted).  These considerations ensure that the proffered evidence meets the standard of reliability and relevance.  <u>See</u> <u>Daubert</u>, 503 U.S. at 597.

The defendant's first ground for disregarding Cone's testimony (that Cone is not qualified) relied on the first and third parts of the 702 analysis as articulated in <u>Hurel-Dubois</u>. 326 F.3d at 1340.

There appears to be no Eleventh Circuit decision precisely on point.  However, the Seventh Circuit held in similar circumstances that "an individual with a degree in mechanical engineering is not qualified to give expert testimony on medical questions." <u>Goodwin v. MTD Prod., Inc.</u>, 232 F.3d 600, 609 (7th Cir. 2000)(affirming the trial court's decision to exclude

testimony by a mechanical engineer about whether a broken wing-nut could cause a particular type of damage to the human eye). An expert's opinion testimony simply must be limited to the area of expertise for which the proferring party can qualify that expert.  See id.

Cone clearly has a substantial background in metallurgy. (See Cone Depo. at 5-9.)  She has some minor experience in conducting metallurgical analysis on medical devices.  (See Cone Depo. at 10-11.)  However, she has no background whatsoever in understanding the uses and stresses of a CSLP.  (See id. at 75-77.)  She has never before researched or studied the use of a CSLP.  (Id at 73.)  Cone, herself, testified that the failure analysis she conducted on the Synthes CSLP did not include biological or surgical considerations.  (Cone Depo. at 38.)

There is good reason for this.  Cone is not an expert in biomedical implants.  She admitted at her deposition that she does not even consider herself to be an expert on bone implants. (See id. at 73.)  She stated that she knows nothing about bone grafting; on which bones the CSLP was implanted; what the design life of the CSLP was to be; nor about the design of bone implants.  (See id. at 40,42,44,73; see also infra pp.6-8.)  Cone has never taken any courses on biomedical implants.  (See id. at 15-16.)

As a competent metallurgist, Cone properly limited her

8

deposition testimony to her area of expertise.  However, metallurgy is not the proper field of expertise required in this case.  Testimony in this case must be primarily focused not merely on the fact that the CSLP fractured, but that it fractured after it was inserted during spinal surgery into a human body. Testimony on that issue requires medical, or at least, physiological expertise.  Ms. Cone possesses neither.  Ms. Cone's expertise simply does not coincide with the focus necessary for this case.  The opinions proffered by Florence Cone thus clearly failed to meet the <u>Daubert</u> standard.


**B.    Factual Basis for Cone's Opinions**

Even if Cone possessed the necessary qualifications to offer expert testimony in this case, her opinions have an inadequate factual basis.  For expert opinion testimony to be admissible, among other things, "the methodology by which the expert reaches his conclusions [must be] sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>." <u>Hurel-Dubois</u>, 326 F.3d at 1340.  <u>Daubert</u> requires that the trial judge determine that the expert's testimony is "not only relevant, but reliable." 509 U.S. at 589.  Rule 702 of the Federal Rules of Evidence was amended in 2000 to incorporate the requirements for expert testimony as expressed in <u>Daubert</u> and its progeny.  <u>See</u> infra, at 14-15.  Federal Rule of Evidence 702 provides in relevant part

9

that an expert may testify in the "form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data." Fed. R. Evid. 702.

It is clear that Ms. Cone has very limited experience analyzing medical devices. In fact, she had absolutely no prior experience with a CSLP of any kind. (See Cone Depo. at 15.) She knew nothing of the condition requiring the implantation of a CSLP nor of the process of implantation of the CSLP. (See id. at 71.) Cone did not know what the expectations of medical science were as to the range of stresses the CSLP normally would withstand. (See id. at 72.) She also did not know to what degree the CSLP is expected to remain intact in a patient experiencing pseudoarthrosis. (See id. at 73.) She did not even know to which bones the CSLP was attached. (See id. at 71.) One would not expect a metallurgist to have such a knowledge of medical science. However, without knowledge of the foregoing information, any testimony Cone might offer about whether the CSLP is a defective design would be neither relevant nor reliable.

Simply put, Ms. Cone offers opinions on the ultimate issue of whether the CSLP was defectively designed. However, she does not have a sufficient factual basis from which to offer an opinion on that matter. Thus, for the two foregoing separate and alternative reasons, Cone's testimony and technical report were

viewed by the court in its September 9, 2003 order to be inadmissible and were struck. Thus the court will not consider their contents in this case. Having established the inadmissability of Cone's testimony and report, and as Cone is the plaintiff's only proffered expert, summary judgment in favor of the defendant is due to be granted as to any claim requiring expert testimony.

### IV. Relevant Undisputed Facts[5]

This case arises from the fracture of a titanium Cervical Spine Locking Plate ("CSLP") manufactured by the defendant, Synthes, and surgically attached to the spinal column of the plaintiff, Tamara Smith Strong. (See Compl. ¶ 3-7.) The CSLP is used to support portions of the spinal column while vertebrae heal after a bone graft procedure. (See Def.'s Motion for Summary Jmt. Tab B (hereinafter "Johnson Depo.") at 15.)

After experiencing neck pain in September of 1999, Ms. Strong was diagnosed with a herniated disc. (Id. at 12.) In conjunction with Ms. Strong, the diagnosing physician and neurosurgeon, Dr. John D. Johnson, Jr., decided to treat the herniated disc through surgery. (Id. at 18; Def.'s Motion for Summary Jmt. Tab A (hereinafter "Strong Depo.") at 47.) The

---

[5] If facts are in dispute, they are stated in the manner most favorable to the plaintiff. See Fitzpatrick, 2 F.3d at 1115.

surgery involved the fusing of two vertebrae via a bone graft and the insertion of a Synthes CSLP[6] to provide support while the vertebrae healed. (Johnson Depo. at 15.)  Ms. Strong relied on Dr. Johnson to select the proper CSLP for this bone graft procedure. (Strong Depo. at 47.)  And federal law restricts the CSLP to sale only by order of a physician.  (See Attachment A: "Important Information" to defendant's answers to interrogatories (found at Tab E of Defendant's Evid. Submissions).)  This first surgery took place on October 6, 1999.  (Strong Depo. at 42.)

Approximately six months later, in April 2000, the pain in Ms. Strong's neck returned.  (Id. at 70.)  She also experienced pain in her shoulder and arm at this time.  (Id.)  On May 2, 2000, Ms. Strong was examined by Dr. Johnson.  (Johnson Depo. at 25.)  A film of Ms. Stong's vertebrae revealed that the Synthes CSLP was fractured horizontally through the center.  (Id. at 25).  On May 3, 2000 a second surgery was performed by Dr. Johnson to remove the fractured CSLP.  (Id. at 32.)  Also during that surgery, Dr. Johnson confirmed the presence of a pseudoarthrosis (i.e. non-healing of the bone at the point of the graft).  (Id. at 30, 32.)  Dr. Johnson then inserted a new bone graft and an

_____

[6] The CSLP is an "I" shaped piece of titanium with a hole in the center and two "screw holes" each at the top and bottom. Screws are inserted through the holes to attach the device to the vertebrae on either side of the grafted area.  (See Doc. #10, App. AA.)

"Atlantis plate" system[7] instead of the Synthes CSLP.  (Id. at
33.)  The Atlantis system is a more rigid system (i.e. it can
withstand greater stresses without fracturing) than the Synthes
CSLP.  (See id. at 38, 40.)  Ms. Strong no longer has any
complaints of pain or weakness in her upper-body.  (Id. at 41.)

It is undisputed that the Synthes CSLP originally inserted
into the plaintiff fractured due to stresses beyond the splint's
design.  (See Johnson Depo. at 25; Plaintiff's Evid. Submission
No. 8 at 13.)  The plaintiff maintains that the fracture occurred
because of an unreasonably dangerous design.  (See Compl. ¶4.)
The defendant counters that the fracture occurred because of Ms.
Strong's pseudoarthritic condition, which resulted in excess
stress on the CSLP causing it to fracture.  The defendant also
asserts that the risk of such a fracture was fully disclosed to
Dr. Johnson as Ms. Strong's physician.  (Johnson Depo. at 45;
Attachment A to defendant's answers to interrogatories (found at
Tab E of defendant's Evid. Submissions.)

---

[7] Dr. Johnson also performed a different type of bone graft
in this second operation.  In the first surgery a "Cloward graft"
was used, but in the second a "fibular strut graft" was used.
(Johnson Depo. at 32, 35.)  Dr. Johnson testified that the
Atlantis splint was chosen for the second surgery as it was more
compatible with the fibular strut graft used in that surgery and
was more appropriate given the psuedoarthrosis condition he
observed in Ms. Strong.  (See id. at 35, 38).

13

## IV. Applicable Substantive Law and Analysis

Plaintiff's one count complaint contains the following claims: (1) liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); (2) negligence; (3) misrepresentation; and (4) breach of implied or express warranty. Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima facie case and that there is no genuine issue of material fact as to any of plaintiff's claims against defendant.   The Court will address each of plaintiff's claims separately.

### A.   Liability under the AEMLD

To establish a prima facie case under the AELMD, the plaintiff must show that:

"(1) [s]he suffered injury or damages to [her]self or h[er] property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer if:

(a)   the seller is engaged in the business of selling such a product, and

(b)   it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

"(2) Showing these elements, the plaintiff has proven a

14

prima facie case although

    (a)   the seller has exercised all possible care in the preparation and sale of his product, and

    (b)   the user or consumer has not bought the product from, or entered into any contractual relation with, the seller."

Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134 (Ala. 1976); see also General Motors Corp. v. Edwards, 482 So. 2d 1176, 1182 (Ala. 1985); Nettles v. Electrolux Motor Ab, 784 F.2d 1574 (11th Cir. 1986) (applying Alabama law).

As the prima facie requirements make clear, the AEMLD is not a theory of strict liability, but instead retains the requirement of fault. Brownlee v. Louisville Varnish Co., 641 F.2d 397, 400 (5th Cir. 1981) (applying Alabama law). Thus, the focus of an AEMLD claim is on the fault of the manufacturer in placing a product which is in an unreasonably dangerous condition in the stream of commerce. The unreasonably dangerous condition can arise from the product's design, manufacture, or from the manufacturer's failure to warn. See, e.g., Tillman v. Reynolds Tobacco Co., 89 F.Supp. 2d 1297, 1300 (S.D. Ala. 2000), vacated on other grounds, Tillman v. R.J. Reynolds Tobacco, 2003 WL 21894270 (11th Cir. 2003).

The AEMLD requires the plaintiff to affirmatively show an

*unreasonably dangerous* defect existed in the product at the time it was manufactured.  Townsend v. General Motors Corp., 642 So. 2d 411, 415 (Ala. 1994).  An "unreasonably dangerous" defective condition under the AEMLD is one that causes a product to fail to meet the reasonable expectations of an ordinary consumer as to its safety.  Casrell, 335 So. 2d at 133.  However, manufacturers are not liable simply because their products are not as safe as possible.  Townsend at 415; see also Edwards,428 So. 2d at 1183, *overruled on other grounds*, Schwartz v. Volvo N. America Corp., 554 So. 2d 927 (Ala. 1989) (holding that "failure of a product does not presuppose the existence of a defect").

Additionally, when the product at issue is purchased by a physician for use in, or on, a patient, the reasonable expectation of the safety of the product is judged from the viewpoint of the physician, or "learned intermediary."  See Morguson v. 3M Co., 2003 WL 856070 *5 (Ala. 2003), citing Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1313 (11th Cir. 2000)(holding that the court will rely "on the expertise of physician intermediaries in cases where the medical product and its related warning are too complex to be fully appreciated by the patient.").

The AEMLD also requires the plaintiff to show that a safer, practical, alternative design was available to the manufacturer at the time the product was manufactured.  See Beech v. Outboard

Marine Corp., 584 So. 2d 447, 450 (Ala. 1991) *citing* Edwards 482
So. 2d at 1191. Specifically, the plaintiff must prove that the
alleged alternative design is "safer". Id. Whether an
alternative is "safer" should be determined while "taking into
consideration such factors as the intended use" of the product
and whether "the utility of the alternative design outweighs the
utility of the design actually used." Id.[8]

Also, under the AEMLD, the plaintiff must prove that the
alleged defective condition of the given product proximately
caused her injury. Taylor v. General Motors Corp., 707 So. 2d
198, 202 (Ala. 1997) *citing* Sears, Roebuck & Co. v. Haven Hills
Farm, Inc., 395 So. 2d 991 (Ala. 1981).

Counsel for the plaintiff asserts that the AEMLD does not

_____

[8] The test in its entirety was first expressed by the
Alabama Supreme Court in Edwards 482 So. 2d at 1191:

In order to prove defectiveness, the plaintiff must prove that
a safer, practical, alternative design was available to the
manufacturer at the time it manufactured [the product].   The
existence of a safer, practical, alternative design must be
proved by showing that:

"(a)  The plaintiff's injuries would have been
       eliminated or in some way reduced by use of the
       alternative design; and that
 (b)   taking into consideration such factors as intended
       use of the vehicle, its styling, cost, and
       desirability, its safety aspects, the
       foreseeability of the particular accident,
       the likelihood of injury, and the probable
       seriousness of the injury if that accident
       occurred, the obviousness of the defect, []the
       manufacturer's ability to eliminate the
       defect, [and whether] the utility of the
       alternative design outweighed the utility of
       the design actually used."

17

require expert testimony to establish the existence of a defective condition.  This, however, is not universally true.  If a product is sufficiently complex or technical, then expert testimony is needed for the plaintiff to establish the defective condition component of her prima facie case.  See Goree v. Winnebago Ind., Inc., 958 F.2d 1537, 1541 (11th Cir. 1992) *citing* Brooks v. Colonial Cheverolet-Buick, Inc., 579 So. 2d 1328, 1332 (Ala. 1991); Haven Hills, 395 So. 2d at 995.[9]  Expert testimony is not required when "under all the attendant circumstances, absent expert testimony, the jury could reasonably infer from the product's failure of performance that a defective condition caused the injury."  Brooks, 579 So. 2d at 1332.  As a result, experts are typically required for the plaintiff to make a prima facie case.  Haven Hills, 395 So. 2d at 995.

In this case, Ms. Strong clearly fails to produce the evidence necessary to make out a prima facie claim under the AEMLD.  In fact, all that the plaintiff's evidence establishes is that the CSLP fractured while in Ms. Strong.  Ms. Strong provides

_____

[9] The court recognizes that expert testimony is less common to UCC claims, such as a claim for breach of implied warranty of merchantability.  See Ex parte General Motors 769 So. 2d 903, 912-13 (Ala. 1999).  However, the Alabama Supreme Court has carefully distinguished between the evidence required to show a breach of implied warranty claim under Alabama's application of the UCC and the plaintiff's more substantial burden of production set out by the AEMLD.  See, e.g., Ex parte General Motors 769 So. 2d at 912-913.  And even in some UCC claims an expert may be required to testify as to the malfunction of a given product. Id. at 913.

no admissible evidence as to what the reasonable expectations of performance are for a CSLP.  And as the CSLP is a medical device that requires substantial medical training for selection and application, such evidence would necessarily require expert testimony.  Expert testimony is also required to explain the impact, if any, that Ms. Strong's pseudoarthrosis had on the failure of the CSLP.

Additionally, Ms. Strong offers absolutely no evidence to suggest the CSLP is expected to remain intact if the bone graft failed, or was slow, to heal.  To the contrary, Dr. Johnson made clear in his deposition testimony that he believed the CSLP fractured due to the psuedoarthritic condition of Ms. Strong. (Johnson Depo. at 44.)  Dr. Johnson also testified that he knew prior to the surgery that the CSLP likely would not remain intact if the bone graft did not fuse.  (See id. at 26.)

Finally, the plaintiff offers no admissible evidence regarding a viable, alternative CSLP design that was available to Synthes at the time its CSLP was manufactured in 1992.  Even if the court were to allow the deposition testimony and expert report of the plaintiff's proffered expert, Florence Cone, the plaintiff still would have no evidence of an alternative design. In fact, Cone testified that she was unaware of any alternative CSLP designs.  (Cone Depo. at 82.)  On this evidence, a jury could neither reasonably base a conclusion that the Synthes CSLP

19

inserted into Ms. Strong was defectively designed or
manufactured, nor could a jury infer that the CSLP was
unreasonably dangerous.  Therefore, summary judgment is due to be
granted in favor of the defendant as to the AEMLD claim.

### B.    The non-AEMLD claims

In addition to the AEMLD claim, the plaintiff makes numerous
claims of negligence as well as claims for misrepresentation and
breach of implied or express warranty in her one count complaint.
The defendants, however, argue that as a matter of Alabama law
all of plaintiff's non-AEMLD claims are subsumed by her AEMLD
claim because they are based on the same underlying allegation
and theory that the Synthes CSLP was unreasonably dangerous.  The
defendant's thus urge that if the court grants summary judgment
on the AEMLD claim, it must also grant summary judgment on the
non-AEMLD claims.

The defendant relies on <u>Spain v. Brown & Williamson Toboaaco
Corp.</u> for the position that the AEMLD claim subsumes the non-
AEMLD claims in the complaint.  230 F.3d 1300, 1310 (11th Cir.
2000) *citing* <u>Veal v. Teleflex, Inc.</u>  586 So. 2d 188, 190-91 (Ala.
1991).

In <u>Veal</u>, the Alabama Supreme Court held that "the trial
court did not err when it instructed the jury only on the
plaintiff's AEMLD claim and refused to instruct the jury on

negligence." 586 So. 2d at 191. The <u>Spain</u> court, in holding that the non-AEMLD claims in that case were subsumed by the AEMLD claim, noted that the allegations of the non-AEMLD counts of the plaintiff's complaint were identical in nearly all respects to the allegations made in the AEMLD count. <u>Spain</u>, 230 F.3d at 1310.

However, two recent opinions of the Alabama Supreme Court clearly undermine the defendant's argument that non-AEMLD claims are subsumed by an AEMLD claim.[10] Anticipating this possible development in the law, the defendant alternatively argues in support of its motion for summary judgment that notwithstanding the relationship of AEMLD and non-AEMLD claims, the plaintiff has failed to establish a prima facie case as to any of the non-AEMLD tort and contract claims she alleges.

_____

[10] When this case was filed and at the time defendant's motion for summary judgment was filed, the common law of Alabama was understood by this court to be that all non-AEMLD product liability claims merged into the plaintiff's AEMLD claim. However, as the defendant correctly suggested to the court in its notice of recent case law filed on July 8, 2003, the Alabama Supreme Court has recently provided some clarity on the issue of merger of non-AEMLD claims. (<u>See</u> Doc. #18). In short, the Alabama Supreme Court held that common law tort remedies are <em>not</em> subsumed by the AEMLD. <u>Spain v. Brown & Williamson Tobacco Corp.</u>, 2003 WL 21489727, *3 (Ala. 2003). The Alabama Supreme Court further held that claims based on an implied warranty of merchantability are distinct from an AEMLD claim "and [are] viable to redress an injury caused by an unreasonably dangerous product." <u>Id</u>. at *9.

### 1.   Miscellaneous Negligence Claims

Paragraph six of the only count of the complaint alleges that the defendant negligently "manufactured, designed, formulated, tested, provided warnings for, instructed, marketed, packaged, [and] labeled" its CSLP porduct.  (See Compl. at ¶6.)

The court can find no basis in Alabama law for a cause of action alleging negligent formulation, testing, marketing, packaging, or labeling.  This is not the first time such a search has been unfruitful.  See McLain v. Metabolife Int'l, Inc., 193 F.Supp. 2d 1252, 1257 (N.D. Ala. 2002).  The court in McLain also found such claims to have no basis in Alabama law.  The plaintiff has failed to bring to the court's attention any change in the status of Alabama law regarding these claims and the court has found nothing to indicate any development as to these claims upon its own research.  Moreover, even if actions for negligent formulation, testing, marketing, packaging, or labeling are tenable under Alabama law, the plaintiff has provided the court with absolutely no evidentiary support for any of these claims.  Therefore, summary judgment is due to be granted as to the claims for negligent formulation, testing, marketing, packaging, and labeling contained within paragraph six of the complaint.

## 2.   Negligent Failure to Warn

To maintain an action for negligent failure to warn, the plaintiff must prove that (1) the defendant had a duty to warn her of the product's danger when used in its customary manner; (2) the defendant's warning breached that duty because it was inadequate; and (3) the breach proximately caused the plaintiff's injuries.  See Rodgers v. Shaver Mfg. Co., Inc., 993 F.Supp. 1428, 1437 (M.D. Ala. 1998) citing Strickland v. Royal Lubricant Co., 911 F.Supp. 1460, 1468 (M.D. Ala. 1995).  A warning is "adequate" (i.e. not negligent) if it is "reasonable under the circumstances, and it need not be the best possible warning." Id. quoting Gurley v. American Honda Motor Co., 505 So. 2d 358, 361 (Ala. 1987).

The duty to warn of risks associated with prescribed medical devices does not run directly to the patient under Alabama law. See Stone v. Smith, Kline & French Labs, 447 So. 2d 1301, 1304 (Ala. 1984).  In Stone, the Alabama Supreme Court held that where prescription drugs were concerned, a manufacturer's obligation to warn was fulfilled upon the conveyance of that warning to the treating physician.  Id.

Here, by FDA regulation, the CSLP is a device available only by order of a physician.  (See Attachment A to defendant's answers to interrogatories (found at Tab E of defendant's Evid. Submissions.))  And precisely like the prescription

23

pharmaceuticals in <u>Stone</u>, the manufacturer's warning to the prescribing physician is sufficient to fulfill any duty to warn a foreseeable user of the product.  Evidence submitted by the defendant establishes that Synthes provided a warning regarding the risk of fracture to Dr. Johnson within the CSLP package. (Id. at Attachment: "Package Insert: For the Personal Attention of the Operating Surgeon" at "Warnings" Nos. 1, 2.)  And the plaintiff has provided no evidence to support a contention that the warning provided by Synthes to Dr. Johnson was inadequate.

However, even if Synthes had a duty to directly warn Ms. Strong (as opposed to her treating physician, Dr. Johnson), the plaintiff still must prove that Synthes failed to adequately warn her of the dangers associated with the implantation of the CSLP *and* that Synthes's failure to do so proximately caused her injury.  Under Alabama law a negligent failure to warn claim cannot be submitted to the jury unless there is evidence that an adequate warning would have been *read and heeded and would have prevented the accident.*  <u>Deere & Co.</u>, 586 So.2d at 198.  If Ms. Strong had presented evidence to the court that, had there been a warning concerning the possibility of injury, she would have read that warning and heeded it, then Synthes would not be entitled to summary judgment on this claim.  But Ms. Strong did not provide any such evidence.  To the contrary, Ms. Strong's own testimony undermines her ability to maintain the failure to warn claim.

She testified at deposition that even if she had known of the
risk of "plate failure" associated with the implantation of the
Synthes CSLP, she would have nevertheless gone forward with the
surgery.  (Strong Depo. at 53.)   In short, regardless of whether
there was a warning regarding plate failure, Ms. Strong testified
that she would not have heeded it.  Therefore, summary judgment
is due to be granted to the defendant on the negligent failure to
warn claim.


### 3.   Negligent Manufacture and Design

Plaintiff's claims for negligent manufacture and design are
superfluous given the AEMLD claims.  Under the court's
understanding of the AEMLD prior to Spain, 2003 WL 21489727, *3
(Ala. 2003), negligent manufacture and design were tantamount to
an AEMLD claim.  See, e.g., Mclain v. Metabolife Int'l., Inc.,
193 F.Supp. 2d 1252, 1256-57 (N.D. Ala. 2002)(holding that "[i]t
is axiomatic that the essence of an AEMLD claim is the
defendant's putting a defective product into the stream of
commerce.") In other words, defective design and manufacture were
established by inference from the factual determination that a
given product was unreasonably dangerous.  A product is
"unreasonably dangerous" when it causes injury in the course of
its expected use.  See Casrell, 335 So. 2d at 133.  When a given
product is sufficiently technical or complex, it is necessary for

25

expert testimony to be presented regarding the reasonable use of the product. See Goree, 958 F.2d at 1541; Brooks, 579 So. 2d at 1332.  The Alabama Supreme Court's recent opinion in Spain does not appear to change these prima facie requirements with regard to negligent manufacture and design claims arising from allegations identical to those underlying the plaintiff's AEMLD claim.  See generally Spain 2003 WL 21489727 at *3.

Indeed, it is difficult for the court to imagine any manner other than that prescribed by the AEMLD through which the plaintiff could establish the defendant's breach of a duty to properly design and manufacture a product.  As the court discussed infra pp. 17-20, expert testimony is necessary in this case.  The reasonable performance expectations of the Synthes CSLP cannot be known from all the attendant circumstances of the CSLP's fracture, absent expert testimony.  The plaintiff has failed to offer any such testimony.  Therefore, summary judgment is due to be granted in favor of the defendant as to the negligent manufacturing and design claims.

### 4.  Misrepresentation

A claim for misrepresentation under Alabama law requires the plaintiff to demonstrate that 1) the defendant made a false representation, 2) concerning a material fact, 3) upon which the

plaintiff reasonably relied, and 4) which proximately caused the plaintiff damage.  <u>Taylor v. Moorman Mfg. Co.</u>, 475 SO. 2d 1187, 1189 (Ala. 1985).  Obviously, before the court could even begin to consider the materiality, reliance or damage elements of this claim, the plaintiff must establish that a representation, false or otherwise, was made by the defendant to the plaintiff.  Ms. Strong testified at her deposition that no one at Synthes made any representations to her prior to her 1999 surgery.  (Strong Depo. at 59.)  More specifically, the plaintiff testified that she had never spoken with anyone at Synthes before her 1999 surgery and that she had never seen any literature from Synthes prior to her 1999 surgery.  (Id.)  Therefore, summary judgment is due to be granted in favor of the defendant as to the misrepresentation claim.


### 5.  Breach of Implied or Express Warranty

Plaintiff's claim of breach of an express warranty by Synthes is easily dealt with.  Ms. Strong testified that she was not given any warranties by Synthes. (<u>See</u> Strong Depo. at 59.)  Since the plaintiff presents no evidence of any express warranties, it is impossible for the plaintiff to maintain a claim for breach of such warranties.  Therefore summary judgment is due to be granted in favor of the defendant as to the claim for breach of express warranty.

As to plaintiff's claim for breach of implied warranties[11], Alabama's adoption of the UCC provides in pertinent part:

(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

(2) Goods to be merchantable must be at least such as:

    (a) Pass without objection in the trade under the contract description; and

    (b) [A]re of fair average quality within the description; and

    (c) Are fir for the ordinary purposes for which such goods are used; and...

    (e) Are adequately contained, packaged, and labeled as the agreement may require; and

    (f) Conform to the promises or affirmations of fact made on the container or label if any.

Rampey v. Novartis Consumer Health, Inc., 2003 WL 21246560, *5 (Ala. 2003) *quoting* Ala. Code 1975 § 7-2-314.

In the instant case it is undisputed that the CSLP fractured. However, that does not answer the question posed by the implied warranty of merchantability. The proper question is whether the CSLP performed as it was intended. The plaintiff has presented no admissible evidence regarding the expected performance of the CSLP. And even if the court were to consider the testimony of plaintiff's expert Florence Cone, the claim would still fail. Cone testified that she did not even know what

---

[11] Although plaintiff did not explicitly state so in her complaint, the court understands the plaintiff to be claiming a breach of both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

the design considerations were for the CSLP. (Cone Depo. at 75-76.) Thus, she could not possibly have known whether the CSLP was intended to remain intact if, for instance, a patient's bone graft failed to heal properly. The defendant, on the other hand has produced expert testimony and other evidence demonstrating that the CSLP performed the job it was intended to do; and that the manufacturer's warnings and precautions accompanying the product were in keeping with Synthes's knowledge of the CSLP's inherent risks. (See Attachment A: "Package Insert" to defendant's answers to interrogatories.) These undisputed facts simply cannot support a claim of breach of the implied warranty of merchantability. Therefore, summary judgment is due to be granted in favor of the defendant as to this claim as well.

Finally, Alabama's implied warranty of fitness for a particular purpose requires:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required *and* that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is... an implied warranty that the goods shall be fit for such purpose.

Rampey 2003 WL 21246560 at *5 *quoting* Ala. Code 1975, § 7-2-315. The plaintiff has asserted no evidence that the plaintiff, nor Dr. Johnson was relying on Synthes's skill or judgment to select a proper CSLP for Ms. Strong. In fact, Ms. Strong testified that she relied on Dr. Johnson alone to make that decision, not Synthes. (Strong Depo. at 47.) Therefore, this

claim too is due to be dismissed on summary judgment.

In summary, the Court finds that no material issue of fact remains and that defendant Synthes (USA) is entitled to judgment as a matter of law as to all claims asserted by plaintiff.  A separate order will be entered.

DONE this ___12th___ day of November, 2003.


_____
SENIOR UNITED STATES DISTRICT JUDGE